UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>v.<br><br>JUSTIN STUBBS,<br>    Defendant. | Crim. No. 04-10368 |

**DEFENDANT'S SENTENCING MEMORANDUM**

I.   **FACTS**

The Defendant adopts the state of the offense conduct in the Presentence Report.

As the Presentence Report makes clear, the Defendant had an extraordinarily chaotic childhood and adolescence. He never truly never had a family life, and grew up with few positive role models. Born into an abusive family, the Defendant initially lived with his father, "mother," and his brother and two half-brothers in Norway and Portland, Maine. At the age of 12, he learned that the woman he believed was his mother was in fact his step-mother. To get away from the physical abuse and psychological betrayal he felt, the Defendant left home at the age of 12 and went to Florida, where he lived on the streets or in shelters, and did odd jobs for money.

He retuned to Maine at age 13, where he again lived on the street, with friends, or in shelters. During the times he was committed to the Maine Department of Human Services, he lived in group homes.

While living in one such group home at the age of 14, the Defendant learned the identity of his mother, who began visiting him. The Defendant was released to his mother's custody in Pennsylvania. Although an alcoholic, the Defendant's mother was never abusive. Her various boyfriends were however, and the Defendant soon left Pennsylvania to return to Maine, where he lived with friends, struggling to survive.

The Defendant's last contact with his parents was at age 16.

The only positive adult relationship the Defendant formed during his childhood and adolescence, was with Llewellyn Nelson. The Defendant met Mr. Nelson at about the age of 12, when the Defendant's older brothers used him to collect $6.00 for a fraudulent magazine subscription. Mr. Nelson confronted the Defendant about the theft, and worked out an arrangement for the Defendant to pay him back by doing errands and mowing the lawn. Mr. Nelson soon became a surrogate parent for the Defendant, and the two have remained closed ever since. The Defendant has lived with Nr. Nelson from time to time, and would likely stay with him during any brief period of time he resides in Maine upon his release.

In April, 2002, the Defendant married Ismahan Abdi, now Ismahan Stubbs. They have one child, Angel Stubbs, now age 3. Ismahan and Angel live in Columbus, Ohio. It is the Defendant's desire to live with his wife and child upon his release, and to work toward establishing a normal family life. The Defendant readily admits he has never had such a life, and in fact has little idea what it means. He acknowledges that his relationship with Ismahan has been difficult. Within the limits of their resources however, they have remained in contact throughout the Defendant's incarceration, the Defendant writing his wife

nearly every day. Both the Defendant and his wife want to make their marriage work, and would like to attend family counseling.

II.  **ARGUMENT**

A.  **Pursuant to 18 USC 3553(a), time served is the appropriate sentence.**

Following *United States v. Booker*, 125 S. Ct. 738 (2005), the Sentencing Reform Act has taken on new vitality, and it is to this statute that the Court must look for guidance in setting a just sentence. Pursuant to 18 USC §3553(a), a sentence shall be "sufficient, but not greater than necessary" to achieve the four sentencing goals set out in §3553(a)(2):

(a) retribution (to reflect seriousness of the offense, to promote respect for the law, and to provide "just punishment");

(b) deterrence;

(c) incapacitation ("to protect the public from further crimes"); and

(d) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

To determine the minimally sufficient sentence, the Court must look to the several factors listed in §3553(a):

(1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"

(2) "the kinds of sentence available;"

(3) the guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range;

(4) the need to avoid unwarranted sentencing disparity; and

(5) the need to provide restitution where applicable.

18 USC §3553(a)(1) and (3)-(7).

In reaching a sentencing decision, the range proposed by the Guidelines is now only one factor among many in determining the sentence. *United State v. Ameline*, 400 F. 3d 646 (9th Cir 2005); *United States v. Ranum*, 353 F. Supp. 2d 986 (E.D. Wis. 2005); *United States v. Myers*, 353 F. Supp. 2d 1026 (S.D. Iowa 2005). To assign the proposed Guideline sentence presumptively greater weight "comes perilously close to the mandatory regime found to constitutionally infirm in Booker." *United State v. Jaber*, 62 F. Supp. 2d 365, 372 (D. Mass. 2005).

Applying these factors to the Defendant, time served, with individual or couples therapy as a special condition of release, is the most appropriate sentence.

**(1)   The nature and circumstances of the offense and the history and characteristics of the defendant.**

The offense was non-violent and motivated by his fear of being returned to prison as a result of being told he had scored 5.96 on a Breathalyzer test.[1] The Defendant panicked and left, wanting to spend time with his family before being sent back to prison.

Is it notable that Coolidge House records indicate that the Defendant called his case worker after he left to explain why he left, and to ask, repeatedly, whether he should turn himself in. (PSR, ¶13b). It is also notable that upon his arrest, the Defendant told the Deputy Marshals that he had been heading to Portland, Maine, to see a friend, and that he had planned to turn himself in after

---

[1] The Defendant contends this reading was erroneous. The addendum to the PSR indicates that Coolidge House records indicate the reading was 0.059.

the visit. Even while on escape, the Defendant acknowledged his guilt, and was planning for his surrender.

As described above, with little experience of what it means to have a family, the Defendant started one with his wife, and the thought of losing that to further incarceration led to the commission of this offense. After a short but arduous life, the Defendant now has the opportunity to begin again. A sentence of time served plus a requirement of family or individual counseling would facilitate that process and enhance his rehabilitation.

**(2)    The kinds of sentence available.**

The Court has available to it an enormous range of option. Of particular importance here would be conditions of supervised release designed to encourage and support the Defendant in his and rehabilitation. These would include individual or family counseling; and regular employment. The Defendant has an offer of employment from Richard Ayer, the owner of Pro-Painting, located in Columbus. (See, Ex. E.)

A transfer of supervision to the District of Ohio in Columbus, would be required.

**(3)    The guidelines and policy statements issued by the Sentencing Commission, including the (now non-mandatory) guideline range.**

As determined by the Probation Office, the Defendant is Level 7, Category IV.[2] This yields a range of 8-14 months, in Zone C.

The Defendant was arrested on October 4, 2004. He was at large for less than one month. After completing the sentence from which he escaped, he

---

[2]    As in all escape cases, the offense level is automatically enhanced by two points pursuant to §4A1.1(d). This represents a mandatory sort of double counting, since an escape must always occur when a Defendant is under a prior criminal justice sentence.

transferred to the custody of the Marshal Service for the District of Massachusetts on March, 22, 2005. He was arraigned on April 5, 2006. At the time of sentencing the Defendant will have been in custody on this charge for approximately 5.5 months.

A sentence of time served differs from the Guideline sentence by approximately 2.5 months. This would not represent a dramatic departure.

**(4)   The need to avoid unwarranted sentencing disparity.**

This concern is obviated in that the recommended sentence does not differ substantially from the Guideline sentence.

**(5)   The need to provide restitution where applicable.**

This factor is not applicable.

### III.   CONCLUSION

As attested to in the letters of support by those who know his best, his wife, Ismahan Stubbs (Ex. A); his surrogate father, Llewellyn Nelson (Ex. B); his brother, John Stubbs (Ex. C) ; a friend, Katelynn Diane Kochaniec (Ex. D); and an employer, Richard Ayer (Ex. E); the Defendant is a person who very much wishes to change his life in appositive way. The Defendant's own letter, attached below as Ex. F clearly expresses this. The proposed sentence of time served, with individual or family counseling as a special condition of supervised release will support him in doing that and will achieve a just sentence in this case.

|  | JUSTIN STUBBS<br>by his attorneys, |
|---|---|
| Date: 8/19/05 | /s/ Matthew H. Feinberg<br>Matthew H. Feinberg<br>BBO #161380<br>Matthew A. Kamholtz<br>BBO #257290<br>FEINBERG & KAMHOLTZ<br>125 Summer St.<br>Boston, MA 02110<br>(617) 526-0700 |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was this day served upon the following attorney(s) of record, via electronic/first class mail:

Robert Richardson, AUSA  
United States Attorney's Office  
Suite 9200  
One Courthouse Way  
Boston, MA 02210

Jennifer D. Sinclair, USPO  
United States Probation Office  
United States Courthouse  
One Courthouse Way  
Boston, MA 02110

Date: 8/19/05

/s/ Matthew A. Kamholtz